Filed 10/6/23  P. v. Reed CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DUPRI NYARI REED, <br><br> Defendant and Appellant. | F085353 <br><br> (Super. Ct. No. 12CM3586HTA) <br><br><br> **OPINION** |

## THE COURT*

APPEAL from an order of the Superior Court of Kings County.  Robert S. Burns, Judge.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Erin R. Doering and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Hill, P. J., Peña, J. and Meehan, J.

# INTRODUCTION

Appellant and defendant Dupri Nyari Reed (defendant) was charged with premeditated attempted murder with a firearm enhancement and a prior strike conviction. In 2013, he entered into a negotiated disposition and pleaded guilty to attempted murder without the premeditation allegation, and admitted a firearm enhancement. The trial court dismissed the prior strike conviction and sentenced him to 19 years in prison.

In 2022, the trial court denied his petition for resentencing filed pursuant to Penal Code[1] section 1172.6, and found he was ineligible for resentencing because he was the actual shooter. In doing so, the court relied on a stipulation about the factual basis made at defendant's change of plea hearing in 2013, that there was circumstantial evidence he was the actual shooter; and defense counsel's stipulation at the section 1172.6 hearing, that the court could consider the probation report's factual summary in making the prima facie determination that stated he was the actual shooter and no one else was charged in the case.

On appeal, defendant alleges he never stipulated at the plea hearing that he was the actual shooter, and the trial court improperly made factual findings when it denied his petition. The People assert the court properly relied on defendant's stipulation at the plea hearing that he was the actual shooter, and also on the stipulation at the hearing on his petition that the court could consider the probation report's factual summary that quoted a witness as identifying defendant as the shooter.

We find the change of plea transcript is part of the record of conviction, and the trial court properly denied defendant's section 1172.6 petition based on defendant's

---

[1]     All further statutory citations are to the Penal Code unless otherwise indicated. Appellant filed his petition in 2022 under former section 1170.95, which was renumbered as section 1172.6 without substantive change on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.) As such, we refer to the subject statute by its current number throughout this opinion unless otherwise indicated.

2.

stipulation to the factual basis at the plea hearing.  To the extent the court erroneously relied on the probation report's factual summary, such reliance was not prejudicial.

## FACTS[2]

According to the probation report's factual summary, defendant had a dispute with Shambra Reed about his efforts to contact her minor daughter.[3]  The dispute led to an incident where multiple gunshots were fired into Reed's residence while she was present with several minor children.  A witness identified defendant as the gunman.

## PROCEDURAL BACKGROUND

On October 5, 2012, a felony complaint was filed in the Superior Court of Kings County charging defendant with counts 1 through 5, premeditated attempted murder with firearm enhancements, and other felony offenses.

Defendant waived a preliminary hearing.

On November 5, 2012, the information was filed that charged defendant with counts 1 through 6, premeditated attempted murder of, respectively, Reed, Malik Tapia, and Jane Does 1 through 4 (§§ 187, subd. (a), 664) with special allegations as to each count that defendant personally and intentionally discharged a firearm, a handgun (§ 12022.53, subd. (c)), and personally used a firearm (§§ 12022.53, subd. (b), 12022.5, subd. (a)(1)).

Defendant was also charged with count 7, shooting at an inhabited dwelling (§ 246) with personal use of a firearm (§ 12022.5, subd. (a)); count 8, criminal threats to

---

**2**　　Defendant waived a preliminary hearing, and the following facts are from the probation report's factual statement.  As we discuss, one of the issues in this appeal is whether the court could properly rely on that factual statement to determine whether defendant's petition stated a prima facie case for resentencing.  We need not reach that issue for reasons explained below, but quote from the probation report's factual statement only to place the parties' arguments in context.

**3**　　Reed was not related to defendant.

3.

Reed (§ 422) with a gang enhancement (§ 186.22, subd. (b)(1)); and count 9, active participation in a criminal street gang (§ 186.22, subd. (a)) with a prior strike conviction.

**Change of Plea Hearing**

On June 11, 2013, the trial court convened a hearing and the prosecutor stated the parties had reached a negotiated disposition. There is nothing in the record to indicate defendant signed a change of plea form. Instead, the prosecutor and defense counsel advised the court about the terms of the negotiated disposition.

The prosecutor gave a detailed recitation of the negotiated disposition. She moved to amend the information to strike the premeditation allegation alleged as to count 1, attempted murder of Reed, and amend the firearm enhancement for count 1 to state defendant personally used a firearm within the meaning of section 12022.5, subdivision (a). The prosecutor stated defendant would plead guilty to the amended count 1 and admit the amended firearm enhancement for a stipulated term of 19 years, based on the upper terms of nine years for count 1 and 10 years for the firearm enhancement. The other charges and allegations, including the prior strike conviction, would be dismissed in the interests of justice, subject to a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 for purposes of sentencing and the victim impact statement.[4]

Defense counsel agreed that defendant would plead to count 1, attempted murder, for the nine-year sentence, and admit the amended personal use enhancement for the 10-year term, for a stipulated term of 19 years and the dismissal of the prior strike conviction and the other charges.

---

[4]    "A *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted." (*People v. Munoz* (2007) 155 Cal.App.4th 160, 167.)

The trial court granted the amendments, and advised defendant of his constitutional rights and the consequences of his plea. Defendant said he understood and waived his rights.

### *The Factual Basis*[5]

Next, the trial court asked if there was a factual basis for the plea, and the following exchange occurred between the court, the prosecutor, and defense counsel.

> "THE COURT: Factual basis, please?
>
> "[THE PROSECUTOR]: Yes, your Honor. [¶] Had the case proceeded to trial, witnesses have testified that on September 30 of 2012, the defendant, through circumstantial evidence of previous actions, did approach a house that Shambra Reed lived in, with a handgun, *and shot at her and the house*. In front of the house were approximately three to five children who were in the line of fire, and that was in the County of Kings.
>
> "THE COURT: Okay. [¶] And do you concur, [defense counsel]?
>
> "[DEFENSE COUNSEL]: I concur [with] the prosecution. This is a [*People v.*] *West* [(1970) 3 Cal.3d 595] plea, but I concur that *the prosecution would present evidence by way of testimony and circumstantial that would injure my client at trial.*
>
> "THE COURT: That would what[?]
>
> "[DEFENSE COUNSEL]: *Could result in a conviction at trial.*"
> (Italics added.)

The court then addressed defendant.

> "THE COURT: [Defendant], this is the situation. [¶] Before I accept the agreement and your plea, I have to be certain that the district attorney can prove their portion of the case at trial. [¶] In other words, a jury could believe the evidence that they're going to present to show that

---

**5** As we discuss below, when the trial court considered defendant's section 1172.6 petition, it relied on the following discussion about the factual basis to find defendant was ineligible for resentencing because he admitted he was the actual shooter when he entered his plea.

you could be charged with attempted murder as well as personal use of a gun. Okay?

"THE DEFENDANT: Yes, sir.

"THE COURT: *[The prosecutor has] told me that these are the facts that they would present through circumstantial evidence and everything else.* [¶] Remember, circumstantial evidence is just as good as direct evidence. I assume you've talked with your attorney about this case. I assume you guys have talked about what could happen in front of a jury.

"THE DEFENDANT: Yes.

"THE COURT: Given the nature of these charges?

"THE DEFENDANT: (Nods affirmatively.)

"THE COURT: I assume taking all that into consideration that this was, this would probably be your best bet; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. [¶] At this point in time, the [c]ourt does find that there is a factual basis upon the agreement of the parties in this matter. [¶] Is that correct, [defendant]?

"THE DEFENDANT: Yes, sir." (Italics added.)

The trial court found defendant knowingly and voluntarily waived his rights, and understood the nature and consequences of his plea.

Defendant then pleaded guilty to count 1, attempted murder, and admitted the personal use enhancement. The trial court granted the prosecution's motion to dismiss the remaining charges and the prior strike conviction.

**Sentencing Hearing**

On July 26, 2013, the trial court imposed the upper term of nine years for attempted murder, plus the upper term of 10 years for the section 12022.5, subdivision (a) enhancement, for an aggregate term of 19 years, consistent with the negotiated disposition. Defendant did not file an appeal from the judgment.

## PETITION FOR RESENTENCING

On May 2, 2022, defendant filed, in propria persona, a petition for resentencing of his attempted murder conviction under section 1172.6 and requested appointment of counsel.

Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

The trial court appointed the public defender's office to represent appellant, and provided for further briefing.

## The People's Opposition

On August 9, 2022, the prosecution filed opposition to defendant's petition, and attached the reporter's transcript from defendant's change of plea hearing as a supporting exhibit.

### *Factual Statement*

The prosecution's opposition contained a lengthy factual summary that stated defendant was identified as the person who fired multiple gunshots at the home of Reed while she was present with several children, after a dispute about trying to contact her minor daughter. The prosecution's opposition stated this factual summary was "included for informative purposes only *as it was taken from the police reports* as [defendant]

7.

waived preliminary hearing and entered a guilty plea in l[i]eu of trial."  (Italics added.)
The prosecution did not attach the "police reports" as supporting exhibits.

### *The Prosecution's Arguments*

Based on the transcript of the change of plea hearing, the prosecution argued defense counsel stipulated to the factual basis for the plea, including that he was the actual shooter.  The prosecution argued the trial court could rely on that stipulation and the factual statement from the police reports to make the prima facie finding.

The prosecution argued the record of conviction showed defendant "was the actual killer.  [Defendant] stipulated to a factual basis [at the plea hearing] that the prosecution would present evidence that he personally shot at Shambra Reed….  Given that [he] stipulated to a factual basis [at the plea hearing], the court can properly consider" those facts to determine whether he made a prima facie showing.  Since defendant "stipulated that he was the shooter and that he shot at Shambra Reed, the record shows that [he] could still be convicted of attempted murder.  The prosecution had no need to rely on a natural and probable consequences theory of liability and nothing in the record suggests that the prosecution did so."

## Defendant's Reply

On August 22, 2022, defense counsel filed a reply to the prosecution's opposition, and attached the probation report as a supporting exhibit.

### *The Probation Report's Factual Statement*

Defense counsel's opposition began by quoting the probation report's factual statement in its entirety.[6]  According to this factual statement, officers from the Hanford Police Department responded to Reed's residence on the evening of September 30, 2012.

---

[6]     As explained below, at the hearing on defendant's section 1172.6 petition, defense counsel stipulated the trial court could consider the probation report's factual statement to determine if the petition stated a prima facie case.

Reed reported that shots were fired at her apartment; she did not see the actual shooting, but she believed defendant was responsible.

Reed said defendant had previously left comments on her minor daughter's social media page that said he liked her and wanted to talk to her.  Reed responded to the messages, told defendant that her daughter was too young and she did not want him to speak to her, and warned that he would "go to jail for the rest of his life if he kept communicating with her daughter."  Reed said defendant continued to contact her daughter on social media, and she again replied with a message to stay away or she would call the police.

Reed reported that a few hours before the shooting, she was at her apartment when she saw defendant across the street at his girlfriend's residence, and he was drinking.  Her daughter also saw defendant and was scared he was there.  Reed walked across the street and told defendant to leave her daughter alone.  According to Reed, defendant replied, " 'F[***] this sh[**], I'm from Hanford Gangster Crips.'  The defendant continued stating 'you don't know what I'm capable of, and I'll spray this place up.'  Furthermore, the victim told the defendant she would call the police and he told her he did not give a 'f[***].'  The defendant stated he would be back and walked off."  (Italics omitted.)

Defendant left the area, and his girlfriend and her mother contacted Reed.  They warned Reed she should stay inside because defendant was going to come back and shoot up the apartment.  Reed did not take the warning seriously.  Reed stayed outside, but then went back inside her apartment to retrieve something while several children remained outside.  The children ran into the apartment and told her to get down, and she could hear gunshots.  They waited inside the apartment until the police arrived.  While Reed never saw who was shooting, she told officers that she suspected it was defendant.

"Officer Martinez also interviewed the daughter of the victim.  She stated she was outside with her friend when she noticed a man who was wearing a black hooded sweater with his hood on covering his face, dark blue sweat pants and white socks.  *The victim's*

9.

*daughter stated she could not see his face because of the hood, but she came to the*
*conclusion it could've been the defendant.  The victim's daughter and her friend went*
*back into the apartment, but as soon as she opened the door she turned around and saw*
*the defendant pointing a gun and starting to fire*."  (Italics added.)

The probation report's factual summary further stated that defendant turned himself in to his parole agent.  A police officer interviewed defendant and asked why he turned himself in.  Defendant said he heard a rumor that a lady said he shot at her, and denied any involvement.  Defendant said he was at the scene but never fired a gun, and "he did not do anything wrong and he didn't know why he was being booked into jail. He further stated 'If I had done what I am being detained for I would of not turned myself in.' "  (Italics omitted.)

### *Defense Counsel's Arguments*

In the reply brief, defense counsel argued that while defendant "admitted in his plea that he intended to kill Shambra Reed with malice aforethought," his petition still made a prima facie case for resentencing because he entered his plea pursuant to *West*, and the stipulation to the factual basis at the plea hearing did not undermine his petition. Defendant pleaded to a generic charge of attempted murder, and that did not foreclose the possibility the prosecution could have relied on the natural and probable consequences doctrine to convict him.

Defense counsel also argued the probation report's factual statement established that defendant made a prima facie case for resentencing based on the following theory: since defendant was standing in front of the house when the shots were fired, "where approximately three to five children were in the line of fire," the prosecution could have argued that "*it would be a natural and probable consequence for someone to die as a*

10.

*result of [defendant] shooting at Shambra Reed and the house with a handgun.*"  (Italics added.)[7]

## THE TRIAL COURT'S HEARING

On October 6, 2022, the trial court held a hearing on whether defendant's petition stated a prima facie case for resentencing.

The trial court stated it had reviewed defendant's petition, the People's opposition, and defendant's reply.  The court further stated that while the parties had cited to police reports and the probation report, "those are not admissible absent stipulation of the parties for the prima facie hearing, or the evidentiary hearing as they are not a part of the record of conviction, and they're separate from the record of conviction, so the [c]ourt has not considered those for today's purposes."

The trial court invited argument from the parties.  Defense counsel argued the petition stated a prima facie case even though defendant pleaded to committing an offense with malice aforethought.  Counsel further stated defendant entered his plea pursuant to *West*, and "*the evidence in my reply* would suffice to show that he has made a prima facie showing."  (Italics added.)

The trial court again stated there had to be "a stipulation from the parties if you're talking about either [the defense] statement[s] of facts, which I believe it said it was taken from the police reports, or the [p]robation [d]epartment report that was attached.  Those don't constitute a record, part of the record of conviction so they're inadmissible.  Right now the only factual statement that I can see that the [c]ourt can consider [a]s part of the

---

[7]  Defendant has not relied on this argument on appeal.  As the trial court later noted, defendant was trying to rely on the doctrine of transferred intent, but it does not apply to attempted murder.  While the prosecution might have relied on a "kill zone" theory, that theory requires proof the shooter had the specific intent to kill each victim identified in each count of attempted murder.

record of conviction is the [i]nformation that was filed, *as well as the guilty plea* from June 11th, 2013 ….." (Italics added.)

The trial court asked the prosecutor "whether or not there is a stipulation or agreement that the [c]ourt can consider either the factual summary as outlined in [defense counsel's] statement of facts in her reply to your opposition, or to the statement of facts as contained in the probation report, which [defense counsel] attached."

The prosecutor stated she would stipulate to the probation report if defense counsel wanted the court to consider it. The trial court advised defendant about the possible stipulation to the probation report:

> "THE COURT: [The prosecutor] said if [defense counsel] wants me to consider the statement of facts in her reply memorandum she filed, and opposition to the People's objection as being the facts of the case, as well as the summation contained in the probation officer[']s report, those are normally documents that the [c]ourt can't consider as evidence or factual evidence, but [defense counsel] would like the [c]ourt to do so, and the [prosecutor] says they have no objection to that. *Is that agreeable with you that I can consider those as factually the facts of this case?*
>
> "THE DEFENDANT: *Yes, sir.*
>
> "THE COURT: *Okay, so the [c]ourt will accept the stipulation of the parties. … I didn't look at the probation report previously because it is not part of the record of conviction …."* (Italics added.)

The trial court reviewed the probation report, and again invited argument. Defense counsel said the probation report's factual summary established that defendant made a prima facie showing and the court should order an evidentiary hearing under section 1172.6.

The prosecutor replied that under normal circumstances, the trial court could not consider the facts stated in the probation report, but "when the defendant stipulates to a factual basis that becomes part of the record of conviction," and cited the parties' earlier stipulation for the factual basis at defendant's plea hearing.

12.

The prosecutor argued the transcript from the change of plea hearing showed defendant "personally shot at the victim's house and at her, and there is no way to impute malice from [someone] else's actions when that was the People's soul [*sic*] theory of the case." The prosecutor argued the court could rely on defendant's stipulation at the plea hearing to find he was the actual shooter, and that the People could not have proceeded on the natural and probable consequences theory.

The prosecutor also argued that the probation report's factual summary did not refer to a codefendant or anyone else alleged to have committed the offense, and a codefendant was not charged in the case. "The case was based on the defendant shooting at the victim, that is it. [Defendant] stipulated to that .…"

**The Trial Court's Denial of the Petition**

The trial court denied defendant's petition and found it failed to state a prima facie case for resentencing, and made lengthy findings as to why he was ineligible for relief as a matter of law.

> "Obviously in California there is a couple of different ways you can be convicted of a crime. You can be convicted of a crime as a perpetrator, which is the person that actually committed the facts, or as an aider and abetter [*sic*], which it sounds like someone that facilitated the crime. The natural and probable consequences doctrine does not apply to perpetrators, it applies to aiders and abetters [*sic*]. It is a form of vicarious liability, and such that if someone agrees to do a robbery and during the course of that robbery the participant or perpetrator kills somebody, and if it was a reasonable, natural, forceable [*sic*] consequence that that homicide could occur and that plan of robbery, then you're liable for that particular crime.
>
> "Part of the record of conviction in this case is the [i]nformation itself, which not only does not have a co-defendant alleged in it, but the practice in this … county, which has been the practice in this county since I started here in 1994 is to alphabetize the charges so that if there is a coparticipant or co-defendant charged there is an alpha designation next to the case name A, B, C, D which is not present in this case.…
>
> "*I did consider the factual basis that was agreed to by [defendant] at the time of the entry of his plea on June 11th, 2013.* During that discourse

13.

there was no indication or mention of a coparticipant being involved, and no co-defendant being charged, which would mean there would be no theory of liability of natural, probable consequences that could have been applied to [defendant]. The … reply to the opposition I think at the very end makes a reference to there were other individuals out front, children out front and that [defendant] could be prosecuted under the theory that he was attempting to kill them, and that intent was applied to … the victim in the count that he pled to. *However, that is legally incorrect. At the time of his plea, before the time of his plea, and currently that would require a transferred intent, and transferred intent is not applicable to attempted murder by long standing case law.* The only other potential theory there would be [is] a kill zone theory. However, a kill zone theory also does not involve transferred intent or vicarious liability. *A kill zone theory is based upon concurrent specific intent to kill each individual victim within the kill zone area, and therefore it is not a natural, probable consequence doctrine, it is a concurrent specific individualized intent to kill ….*

"*It appears to me that the record of conviction before the [c]ourt provides no basis on which [defendant] could be prosecuted under a natural, probable consequences doctrine.* Particularly giv[en] the absence of pleadings which would have a co-defendant or coparticipant, or an absence of any evidence before the [c]ourt that another individual was involved, *coupled with [defendant's] agreement to the factual basis provided at the time of the plea that he shot at Ms. Reed's home with Ms. Reed inside.* There appears to be no basis for a natural, probable consequences doctrine.

"That being the case, it would be as a matter of law that he would not be available for the benefits of [section] 1172.6, because as a matter of law there wasn't a charging document filed for which … it could have been proceeded upon natural and probable consequences.

"And the third element being that he couldn't be convicted [under] any other theory as a matter of law isn't true. And because he couldn't have been prosecuted under natural and probable consequences, he could only be prosecuted under the record before me as the perpetrator of the shooting, not as an aider and abetter [*sic*]. And therefore natural and probable consequences is not applicable." (Italics added.)

On December 1, 2022, defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court improperly denied his petition based on the alleged stipulation at the plea hearing in 2013, because he and his attorney never stipulated to the prosecutor's statement of the factual basis. He further argues that in ruling on his section 1172.6 petition in 2022, the trial court never relied on the probation report's factual statement to make the prima facie determination, and the matter must be remanded for an evidentiary hearing.

The People reply that based on the exchange about the factual basis at defendant's plea hearing, the record of conviction established that if the case had gone to trial, the prosecution only could have proceeded under the theory that defendant was the actual shooter and could not rely on the natural and probable consequences doctrine. The People further argue that the probation report's factual summary may be considered since defendant stipulated to it at the section 1172.6 hearing, and it also supports the trial court's denial of the petition.

## I. Section 1172.6

We begin with the applicable statutes. "Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) [Senate Bill 1437] amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708.)

15.

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*People v. Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) made substantive amendments to former section 1170.95 that were consistent with *Lewis*, *supra*, 11 Cal.5th 952, and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (*People v. Saibu*, *supra*, 81 Cal.App.5th at p. 715, fn. 3.)

Section 1172.6, subdivision (a) thus states:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

16.

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)[8]

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id*. at subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The prima facie determination is a question of law, and the trial court may deny a petition if the petitioner is ineligible for resentencing as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) "As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer.' " (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973; *People v. Garrison* (2021) 73 Cal.App.5th 735, 744.)

---

**8**     While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f).)

If an order to show cause is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.…" (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.…" (§ 1172.6, subd. (d)(3).)

## II. Attempted Murder

In order to address defendant's contentions, we review the theories of attempted murder potentially applicable to this case.

The elements of attempted murder are the specific intent to kill (express malice) and the commission of a direct but ineffectual act towards accomplishing the intended killing. (*People v. Lee* (2003) 31 Cal.4th 613, 623; *People v. Gonzalez* (2012) 54 Cal.4th 643, 653, 664; *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 642.) Implied malice cannot support a conviction of attempted murder. (*People v. Bland* (2002) 28 Cal.4th 313, 327.)

18.

### *Natural and Probable Consequences Doctrine*

Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime (the target offense), the natural and probable consequences of which was attempted murder or murder (the nontarget offense), could be convicted of not only the target crime but also of the resulting attempted murder or murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161, 166; *People v. Gentile* (2020) 10 Cal.5th 830, 843, 845; *People v. Prettyman* (1996) 14 Cal.4th 248, 259, 262; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.)

As explained above, Senate Bill 1437 amended section 188 to eliminate natural and probable consequences liability for first and second degree murder. (*People v. Garrison*, *supra*, 73 Cal.App.5th at p. 742.) Senate Bill 775, which became effective in 2022, "clarified Senate Bill 1437 by amending [former] section 1170.95 to make clear the natural and probable consequences doctrine no longer supplies accomplice liability to attempted murder." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 193.) "Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder. Accordingly, the natural and probable consequences doctrine theory … is now invalid." (*Sanchez*, at p. 196.)

### *Transferred Intent*

As a separate matter, the common law doctrine of transferred intent has never been applied to attempted murder. "To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else." (*People v. Bland*, *supra*, 28 Cal.4th at pp. 323–324, 328; *People v. Souza* (2012) 54 Cal.4th 90, 120.) When a single act is charged as an attempt on the lives of two or more persons, the intent to kill element must be examined independently as to each alleged attempted murder victim. The transferred intent doctrine does not apply, and the intent to kill cannot be "transferred" from one attempted murder victim to another. (*Bland*, at pp. 327–328.)

19.

### *Kill Zone Theory*

In contrast to the natural and probable consequences doctrine, the kill zone theory does not impute malice to a defendant based solely on that defendant's participation in another crime. Instead, under the kill zone theory, a defendant may be convicted of the attempted murder of an individual who was not the defendant's primary target under certain circumstances. (*People v. Canizales* (2019) 7 Cal.5th 591, 596.)

"[A] jury may convict a defendant under the kill zone theory only when the jury finds that: (1) the circumstances of the defendant's attack on a primary target, including the type and extent of force the defendant used, are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm—that is, an area in which *the defendant intended to kill everyone present* to ensure the primary target's death—around the primary target and (2) the alleged attempted murder victim who was not the primary target was located within that zone of harm. Taken together, such evidence will support a finding that the defendant harbored *the requisite specific intent to kill both the primary target and everyone within the zone of fatal harm*." (*People v. Canizales*, *supra*, 7 Cal.5th at pp. 596–597, italics added.)

## III.  The Change of Plea Transcript

In denying defendant's petition, the trial court partially relied on the transcript from defendant's change of plea hearing, and found the discussion about the factual basis did not refer to another participant or perpetrator in the attempted murder, and defendant was charged and convicted as the actual shooter.

Defendant contends the trial court erroneously relied on the plea hearing transcript because he never stipulated to being the actual shooter and his plea was entered pursuant to *West*. The People reply that at the plea hearing defendant conceded the prosecution would introduce evidence implicating him as the shooter, and the prosecutor's stated factual basis meant that the prosecution was not going to proceed on any theories of imputed malice.

We turn to the record of conviction to determine if the trial court could have relied on the change of plea transcript to find defendant was the actual shooter, and thus, his petition failed to state a prima facie case.

## A.  The Prima Facie Inquiry and the Plea Transcript

The prima facie inquiry under section 1172.6, subdivision (c) is "limited."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Ibid.*)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

The record of conviction includes the information, the transcripts for the change of plea and sentencing hearing, and the abstract of judgment.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329–330, overruled on other grounds by *Lewis*, *supra*, 11 Cal.5th at pp. 962–963; *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350.)  In addition, a "prosecutor's recitation of the alleged facts underlying the conviction," made "immediately before the court accepted [a] defendant's guilty plea," is also part of the record of conviction, along with statements made by the defendant in entering a negotiated disposition.  (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1120; *People v. Romero* (2022) 80 Cal.App.5th 145, 153.)

**B.  The Original Charge of Premeditated Attempted Murder**

The initial information charged defendant with six counts of the premeditated attempted murders of Reed and five other people; no other defendants were charged in the case.  If the prosecution had proceeded to trial for one or all of the originally charged offenses of premeditated attempted murder, it had to prove his specific intent to kill the victim of each count, and that he acted with premeditation, deliberateness, and willfulness.  " 'Willful' is synonymous with 'express malice':  in other words, a specific intent to kill.  [Citation.]  Premeditation occurs when the [attempted] killing is ' "considered beforehand," ' and deliberation occurs when the decision to kill is ' "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." [Citation.]' " (*People v. Mejia* (2012) 211 Cal.App.4th 586, 604.)

If the prosecution had proceeded under a kill zone theory, it had to prove defendant had the specific intent to kill everyone present to ensure the primary target's death.  The transferred intent doctrine did not apply to attempted murder.

**C.  Defendant's Plea**

Defendant waived a preliminary hearing and there is no change of plea form in the record.  Defendant correctly states the record of conviction consists of the information, amended information, and the transcript for the change of plea hearing.

At the beginning of the plea hearing, both the prosecutor and defense counsel advised the trial court that defendant was entering into a negotiated disposition to plead to an amended count 1, attempted murder of Reed without the premeditation allegation, and admit the amended firearm enhancement, for a stipulated term of 19 years.

A "generic charge" of murder or attempted murder does not specify or exclude any particular theory, and does not establish ineligibility for resentencing as a matter of law.  (See, e.g., *People v. Flores* (2022) 76 Cal.App.5th 974, 987; *People v. Eynon* (2021) 68 Cal.App.5th 967, 971–972, 979.)

At the time of his plea to attempted murder without premeditation in 2013, the prosecution could have proceeded under the natural and probable consequences theory if defendant acted as an aider and abettor of a perpetrator's commission of the target crime, and the attempted murder (the nontarget crime) was a natural and probable consequence of the target crime. (*People v. Chavez* (2018) 22 Cal.App.5th 663, 683.)

If, however, defendant was the actual perpetrator of the attempted murder, he would be ineligible for relief under section 1172.6 since he would have been convicted based on his own intent to kill, and not as an aider and abettor where malice was imputed from another person. The prosecution could not have relied on transferred intent, and the "kill zone" theory required proof that defendant had the specific intent to kill each person in that zone.

## D. The Factual Basis

Defendant contends that he entered his plea pursuant to *West*, and the trial court's exchange with the parties about the factual basis was not relevant to the plea. "In *In re Alvernaz* (1992) 2 Cal.4th 924, 932 …, the court characterized a *West* plea as 'a plea of nolo contendere, not admitting a factual basis for the plea.' Such a plea, also referred to as an *Alford* plea, based on *North Carolina v. Alford* (1970) 400 U.S. 25, 37–38 …, allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence. The absence of an admission of guilt has no effect on the use of the resulting conviction as evidence in other criminal actions." (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.)

The minute order for the change of plea hearing contains a check in the box that defendant's plea was being entered pursuant to *West*, but the reporter's transcript does not clarify whether that was a term of the negotiated disposition. The parties stated the terms of the negotiated disposition in detail, but neither the prosecutor nor defense counsel stated the plea was being entered pursuant to *West*. Defendant pleaded guilty instead of

no contest. There is no evidence defendant signed a change of plea form that addressed whether the plea was being entered pursuant to *West*.

When the trial court questioned the prosecutor about the factual basis, defense counsel did not object and state it was a *West* plea. Instead, the prosecutor stated the factual basis was that if the case had gone to trial, witnesses would have testified that "the defendant, through circumstantial evidence of previous actions, did approach a house that Shambra Reed lived in, with a handgun, *and shot at her and the house….*"

After the prosecutor stated the proposed factual basis, the trial court asked defense counsel if he concurred. Defense counsel finally stated that it was a *West* plea, and agreed the prosecution would present evidence that would "injure" defendant and "[c]ould result in a conviction at trial."

Defendant argues defense counsel never stipulated or admitted that defendant was the actual shooter. While defense counsel did not make such a stipulation, the trial court turned to defendant and directly questioned him about the factual basis, without objection from counsel.

> "THE COURT: *[The prosecutor has] told me that these are the facts that they would present through circumstantial evidence and everything else.* [¶] Remember, circumstantial evidence is just as good as direct evidence. I assume you've talked with your attorney about this case. I assume you guys have talked about what could happen in front of a jury.
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Given the nature of these charges?
>
> "THE DEFENDANT: (Nods affirmatively.)
>
> "THE COURT: I assume taking all that into consideration that this was, *this would probably be your best bet*; is that correct?
>
> "THE DEFENDANT: Yes, sir.

"THE COURT: Okay. [¶] At this point in time, the [c]ourt does find that there is a factual basis upon the agreement of the parties in this matter. [¶] Is that correct, [defendant]?

"THE DEFENDANT: Yes, sir." (Italics added.)

## E. Analysis

Based on the trial court's exchange with defendant about the factual basis, defendant indicated his agreement and understanding that the prosecutor would introduce certain evidence at trial. In doing so, he agreed that the factual basis included evidence that he was the actual shooter, which prevented the prosecution from relying on the natural and probable consequences doctrine as an aider and abettor.

Defendant contends that to the extent any stipulations or statements were made at the plea hearing, the trial court engaged in impermissible fact finding to rely on these statements to make the prima facie determination. As we have explained, however, statements and stipulations made at a plea hearing are part of the record of conviction. (*People v. Roberts*, *supra*, 195 Cal.App.4th at p. 1120; *People v. Romero*, *supra*, 80 Cal.App.5th at pp. 152–153.) A defendant's admissions in entering a guilty plea "pursuant to a negotiated plea" are not " ' "stray comment[s]" ' "; to the contrary, they are binding and part of the record of conviction. (*Romero*, at pp. 152–153.) We agree with the People that "[t]he record of conviction shows that had this case gone to trial, *the prosecution could have only proceeded under a theory that [defendant] was the actual and only perpetrator of the attempted murder*." (Italics added.)

As a result, defendant was ineligible for resentencing as a matter of law, and the trial court properly denied his petition without issuing an order to show cause because the record of conviction establishes defendant was not convicted of attempted murder under an imputed malice theory.

Given this conclusion, we need not reach the issue of whether the trial court and parties could have stipulated to and relied on the hearsay statements in the probation report's factual summary to make the prima facie determination at the section 1172.6

25.

hearing. To the extent the court erroneously relied on the probation report, the error is not prejudicial since the transcript from the change of plea hearing establishes that defendant entered his plea as the actual shooter and not an aider and abettor. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–974; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## **DISPOSITION**

The court's order of October 6, 2022, denying defendant's petition for resentencing, is affirmed.